# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| TONY KING, | DOCKET NUMBER |
|               Appellant, | AT-0752-18-0079-I-1 |
|     v. | |
| DEPARTMENT OF AGRICULTURE, | DATE: October 20, 2022 |
|               Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Andrew Kim</u>, Esquire, Atlanta, Georgia, for the appellant.

<u>Jose Calvo</u>, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal. For the reasons discussed below, we GRANT the agency's petition for review and REVERSE the administrative judge's finding on the appellant's affirmative defense, instead finding that the appellant failed to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

prove that retaliation for filing equal employment opportunity (EEO) complaints was a motivating factor in the agency's removal action. We AFFIRM the administrative judge's reversal of the appellant's removal

## BACKGROUND

¶2     The agency removed the appellant from his GS-12 Enforcement Investigative and Analysis Officer (EIAO) position with the Food Safety and Inspection Service based on the charges of (1) unprofessional conduct and (2) failure to follow instructions. Initial Appeal File (IAF), Tab 5 at 15-19, 153–59. Regarding the charge of unprofessional conduct, the agency alleged that during a December 6, 2016 Routine Listeria Monocytogenes·(RLM) sampling at Wayne Farms in Decatur, Alabama, the appellant, who was aided by a Consumer Safety Inspector (CSI), got within inches of the CSI's face and stated, "Do you know who I am?" *Id*. at 153. The agency alleged that the appellant's behavior and tone were intimidating and his conduct unprofessional. *Id*. Regarding the charge of failure to follow instructions, the agency alleged that on three occasions the appellant failed to timely respond to email instructions. *Id*. at 154.

¶3     The appellant filed a Board appeal of the agency's action, alleging retaliation for filing EEO complaints and requesting a hearing. IAF, Tabs 1, 19.

¶4     After the hearing, the administrative judge issued an initial decision reversing the removal. IAF, Tab 25, Initial Decision (ID) at 1, 20. She found that those present at the Wayne Farms RLM sampling included, in addition to the appellant and the CSI, another EIAO and an employee of Wayne Farms. ID at 7–8. She credited the testimony of the Wayne Farms employee that the appellant did not raise his voice, speak in a threatening manner or get close to the CSI's face, and was not combative. ID at 11. Thus, she found that the agency did not prove charge (1). *Id*. She also found that the agency failed to show that the appellant did not timely respond to three emails and thus failed to prove

charge (2). ID at 11-15. Additionally, she found that the appellant established that the removal action constituted retaliation for his EEO activity. ID at 16-20.

¶5      In its petition for review, the agency alleges that the administrative judge erred in finding that it did not prove charge (1).[2] Petition for Review (PFR) File, Tab 1 at 4-5, 8-14.[3] In addition, the agency contends that the administrative judge erred in making findings on the appellant's affirmative defense of reprisal for filing EEO complaints because the affirmative defense became moot when the appellant failed to seek consequential damages. *Id*. at 4-5, 14-15. Also, the agency asserts that the administrative judge erred in finding retaliation. *Id*.

---

[2] The agency does not argue that the administrative judge erred in finding that the agency failed to prove charge (2). We therefore find no basis to disturb the administrative judge's determinations regarding charge (2). *See* 5 C.F.R. § 1201.115 (noting that the Board normally will consider only issues raised in a timely filed petition or cross petition for review).

[3] In the initial decision, the administrative judge ordered interim relief. ID at 21-22. Accompanying the agency's petition for review is evidence that it has complied with the interim relief order. PFR File, Tab 1 at 21-36. In a January 12, 2020 filing titled "Petition for Enforcement," the appellant argues that the agency is not in compliance with the interim relief order because it subsequently effected a second removal action against him for unrelated misconduct. PFR File, Tab 8 at 4-8. The agency has filed a response opposing the appellant's request. PFR File, Tab 9. It is well settled that an interim relief order does not insulate an appellant from a subsequent adverse action so long as that action is not inconsistent with the initial decision. *Rothwell v. U.S. Postal Service*, 68 M.S.P.R. 466, 468 (1995). Here, nothing in the initial decision precluded the agency from initiating a second action. Moreover, when an agency effects a second removal action during a period of interim relief ordered in an initial decision in a prior removal action, and the appellant files an appeal of the second action, the Board considers the second removal action on its merits. *See generally Wilson v. Department of Justice*, 66 M.S.P.R. 287, 291, 296-97 (1995). The appellant filed a separate appeal of the agency's second removal action, an initial decision on the merits was issued in that case, and the Board denied the appellant's petition for review of that initial decision. *See King v. Department of Agriculture*, MSPB Docket No. AT‑0752-19-0350-I-1, Initial Decision (July 1, 2019); *King v. Department of Agriculture*, MSPB Docket No. AT‑0752-19-0350-I-1, Final Order (Oct. 18, 2022). Thus, we find it unnecessary to issue an order requiring the agency to submit evidence of compliance with the interim relief order, and we deny the appellant's request. *See Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 20 (2016).

at 15−19.[4]  The appellant has responded in opposition to the petition.  PFR File, Tab 6.  The agency has replied to the appellant's response.  PFR File, Tab 7.

## ANALYSIS

<u>The administrative judge properly found that the agency failed to prove charge (1).</u>

¶6        The agency has the burden to prove charged misconduct by preponderant evidence, 5 C.F.R. § 1201.56(b)(1)(ii), and it contends that it met that burden.  The agency argues that, because the words that the administrative judge found were spoken by the appellant to the CSI during the Wayne Farms RLM sampling, "You don't know who I am," are so similar to the phrase, "Do you know who I am?" recited in the charge, the agency proved the essence of the charge.  PFR File, Tab 1 at 7-11.  The agency also contends that the appellant's testimony that the CSI provoked his statement is contradicted by the Wayne Farms employee, whom the administrative judge found credible.  *Id.* at 11-14.  Thus, the agency contends that, by showing that the words spoken by the appellant were in essence no different from those charged and that those words were not provoked by something the CSI said or did, it proved that the appellant's statement was "unprofessional" and proved charge (1).

¶7        The administrative judge considered whether, during the RLM sampling, the appellant stated, "Do you know who I am?" or "You don't know who I am."  ID at 9-10.  She found it illogical that the appellant would have said, "Do you know

---

[4] The agency argues for the Board to draw an adverse inference because the appellant did not call one of the witnesses whom he alleged witnessed the exchange underpinning charge (1).  PFR File, Tab 1 at 14.  The Board has held that an adverse inference of misconduct can be inferred from the failure of the appellant to testify or to call a witness only in limited circumstances.  *Shustyk v. U.S. Postal Service*, 32 M.S.P.R. 611, 613-15, *aff'd*, 831 F.2d 305 (Fed. Cir. 1987) (Table).  The Board has not permitted a negative inference to be made against a party who, as here, simply fails to call his own nonhostile witnesses at the hearing.  *See Logan v. Department of the Navy*, 29 M.S.P.R. 573, 577−78 (finding that the administrative judge erred when he imposed sanctions by drawing negative inferences against the agency for its failure to produce two witnesses at the hearing), *aff'd*, 809 F.2d 789 (Fed. Cir. 1986) (Table).

who I am?" with its implication that he should not be crossed due to his position because, while it is true that the appellant held a higher grade than the CSI, the appellant was not the CSI's supervisor or anywhere in his chain of command, and the record does not reflect that he had any power over the CSI. ID at 9-10. She found that, given that the Wayne Farms employee's and the other EIAO's testimony were consistent with one another that the appellant stated, "You don't know who I am," it was more likely than not that the appellant said to the CSI, "You don't know who I am," and that he said it in the context of the CSI making unflattering comments about the appellant's character and conduct. ID at 10. She found that the evidence leads to a conclusion that, more likely than not, the appellant was saying, in effect, "you don't know me." *Id*.

¶8    The administrative judge's careful analysis shows a clear difference between the meaning of the statement "Do you know who I am?" and the statement "You don't know who I am" under the circumstances of the exchange between the appellant and the CSI during the Wayne Farms RLM sampling. While the former phrase could be viewed as threatening, the latter phrase is a proper response to personal accusations by another person. Thus, the agency's assertion is unavailing that the phrase that the administrative judge found that the appellant uttered and the phrase recited in charge (1) are so similar that the agency proved that he uttered words that might be viewed as unprofessional.

¶9    The agency's contention that the Wayne Farms employee testified that the appellant's words were not provoked by something the CSI said or did is equally unavailing. The administrative judge credited the Wayne Farms employee's testimony that the CSI said something to the appellant that the Wayne Farms employee found surprising, and in response, the appellant did not raise his voice, speak in a threatening manner or get close to the CSI's face, and was not combative. ID at 11. The Board must give deference to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on the observation of the demeanor of witnesses testifying at a hearing; the Board may

overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Here, the administrative judge found the Wayne Farms employee credible based, in part, on that individual's carriage, behavior, manner of testifying, and appearance. ID at 8. The agency has not given sufficiently sound reasons to overturn the administrative judge's finding that the Wayne Farms employee credibly testified that the appellant gave a measured response to the CSI's surprising statement. Thus, the administrative judge properly found that the agency failed to prove that the appellant's behavior and tone were intimidating and his conduct was unprofessional. She therefore properly found that the agency failed to prove charge (1).

The administrative judge was not precluded from adjudicating the appellant's allegation of retaliation for filing EEO complaints.

¶10    If an appellant prevails in an appeal before the Board based on a finding of discrimination, he may recover compensatory damages from the agency pursuant to the Civil Rights Act of 1991. *Hess v. U.S. Postal Service*, 124 M.S.P.R. 40, ¶ 19 (2016). Thus, reversal of an agency action when an appellant has raised the affirmative defense of discrimination or retaliation for filing a complaint of discrimination does not afford the appellant all possible relief available to him, and the administrative judge must adjudicate the affirmative defense. *See Morey v. Department of the Navy*, 38 M.S.P.R. 14, 17 (1988).

¶11    However, the Board's regulations require that a claim for compensatory damages be raised before the close of the prehearing conference and must be set forth in writing, specifying the amount sought and the reasons why the appellant believes that he is entitled to an award of compensatory damages. 5 C.F.R. § 1201.204(a)-(b). The agency contends that, even though the appellant alleged retaliation for filing EEO complaints, because he did not raise a claim for compensatory damages as provided by section 1201.204, he is precluded from

establishing entitlement to such damages, and the administrative judge should not have adjudicated his affirmative defense of retaliation. PFR File, Tab 1 at 14-15.

¶12    Here, we need not reach the issue of whether a failure to raise a claim for compensatory damages pursuant to section 1201.204 could allow an administrative judge, after reversing an agency action, to dismiss the affirmative defense of discrimination or retaliation without adjudicating it. Although the appellant did not clearly raise a claim for compensatory damages below, there is no indication in the record that he received the appropriate information with respect to how to raise any such damages claim. Board regulations do not require administrative judges or the Board to provide notice of the right to request compensatory damages. *Hawkes v. Department of Agriculture*, 103 M.S.P.R. 345, ¶ 9 (2006), *aff'd*, 253 F. App'x 939 (Fed. Cir. 2007). However, the Board has found it appropriate to waive the appellant's failure to comply with the requirements of 5 C.F.R. § 1201.204(a)-(b) when the appellant was never apprised of the requirements. *See Harris v. Department of the Air Force*, 96 M.S.P.R. 193, ¶ 11 (2004). Thus, we find no error in the administrative judge's adjudication of the appellant's allegation of retaliation for filing EEO complaints.

The administrative judge erred in finding that the appellant established retaliation for filing EEO complaints.

¶13    When an appellant asserts an affirmative defense of discrimination or retaliation under 42 U.S.C. § 2000e-16, the Board first will inquire whether, considering the evidence as a whole, the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶ 28 (2016), *clarified by Pridgen v. Office of Management & Budget*, 2022 MSPB 31, ¶¶ 23-24; *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 41 (2015), *overruled in part by Pridgen*, 2022 MSPB 31, ¶¶ 23-25. Such a showing is sufficient to establish that the agency violated

42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶14    In finding that the appellant proved his affirmative defense, the administrative judge considered that the appellant had filed eight EEO complaints, about one per year over the past 8 years, and that the proposing and deciding officials were aware of those complaints.  ID at 16.  She considered that the Deputy District Manager, who had initiated the disciplinary process but who was not the proposing or deciding official, was aware of those complaints as well, had suggested that the appellant be disciplined for contacting management officials about a pending EEO complaint while he was on leave for the death of a family member, and had stated that he was looking to build a case and "throw darts" against the appellant.[5]  ID at 16-17.  The administrative judge also relied upon her finding that the Deputy District Manager "and perhaps others" had a motive to retaliate, that the process was tainted by procedural irregularities because the agency did not appear to follow its own procedures that the alleged misconduct be investigated by the Internal Control Office (ICO) and did not get a statement from the appellant regarding the events underlying the unprofessional conduct charge, and that the evidence fell far short of supporting a removal.  ID at 17-20.

¶15    We agree with the administrative judge that the record shows that the Deputy District Manager's motivation to have the appellant disciplined was significant; however, we disagree with her finding that his motivation was based on retaliation for EEO activity and that he influenced the decision making process.  The administrative judge found that there was no evidence that the Deputy District Manager was implicated in or punished as a result of the

---

[5] The administrative judge mistakenly attributed the District Manager's testimony to the Deputy District Manager.  ID at 17.  The record shows that it was the District Manager who testified to building a disciplinary case and looking for darts to throw at the appellant.  PFR File, Tab 3, Hearing Transcript at 130, 151-52.

appellant's EEO complaints. ID at 17. The administrative judge also did not describe in any detail the nature of the EEO complaints or otherwise find that the acting officials were implicated in or punished as a result of those complaints. Moreover, the Deputy District Manager did not initiate the disciplinary process that resulted in the appellant's proposed removal. Rather, he initiated the request for discipline because of the complaints filed by the CSI and EIAO who were present at the Wayne Farms RLM sampling. IAF, Tab 5 at 30‑31. Further, there is no evidence that he influenced the charges in the notice of proposed removal as those charges are significantly different from the request for discipline. That request describes the appellant's behavior at the Wayne Farms RLM sampling as bullying, a word not used in the notice of proposed removal. IAF, Tab 5 at 31, 153. Further, the request alleges that the appellant failed in his technical ability to properly don sterile gloves for the sampling, a charge not made in the notice. *Id*. at 31. Additionally, the request identifies other alleged misconduct by the appellant, including an attempt to deceptively request compensatory time, failure to follow District Office Instructions to notify the District Office following the completion of an RLM sampling, and dishonest and unprofessional behavior in requesting leave for the death of a family member and then using this time to contact the agency about his EEO case. *Id*. at 30-31. None of these allegations resulted in misconduct charges against the appellant.

¶16     Further, the administrative judge's finding that the process was tainted by procedural irregularities because the agency failed to follow a prescribed investigative process and obtain a statement from the appellant before taking the action is not supported by the record. Contrary to the administrative judge's finding that the proposing official testified that investigations are always delegated to the ICO, her testimony on cross-examination was that investigations are "usually" done by the ICO. PFR File, Tab 3, Hearing Transcript at 223. Further, requests for discipline are submitted via a form that affords the requesting official the option of checking either an "Investigation" or

"Disciplinary Action" box, and in this case the request was checked "Disciplinary Action." IAF, Tab 5 at 30. Despite the administrative judge's finding that the agency did not seek a statement from the appellant before deciding to discipline him, the record includes evidence that, in response to an inquiry about the events underlying the unprofessional conduct charge, the appellant indicated that the CSI was lying. *Id*. at 31. Importantly, there is no evidence that the Deputy District Manager influenced the deciding official such that he did not afford the appellant his opportunity to respond to the charges. Although the administrative judge found that the credible evidence in support of the action was not strong, we find that any lack of strength in such evidence, when considered along with the other relevant evidence on this issue, is not sufficient to establish that retaliation for EEO activity was a motivating factor in the appellant's removal. *See Gardner*, 123 M.S.P.R. 647, ¶¶ 29-31 (requiring a consideration of the evidence as a whole in determining whether an appellant has proven her affirmative defenses).

¶17 Accordingly, we find that the appellant has failed to show by preponderant evidence[6] that a prohibited consideration was a motivating factor in the contested personnel action.[7] *See Gardner*, 123 M.S.P.R. 647, ¶ 31; *Savage*, 122 M.S.P.R. 612, ¶ 41.

## ORDER

¶18 We ORDER the agency to cancel the appellant's removal and to restore the appellant effective October 10, 2017. *See Kerr v. National Endowment for the*

---

[6] The Board's regulations define "[p]reponderance of the evidence" as "[t]he degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q).

[7] Because we find that the appellant failed to show that any prohibited consideration was a motivating factor in the agency's action, we need not resolve the issue of whether the appellant proved retaliation was a but-for cause of the agency's decision. *See Pridgen*, 2022 MSPB 31, ¶¶ 20-22, 29-33.

*Arts*, [726 F.2d 730](#) (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶19 We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶20 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* [5 C.F.R. § 1201.181](#)(b).

¶21 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. [5 C.F.R. § 1201.182](#)(a).

¶22 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the

Board's decision in accordance with the attached lists so that payment can be made within the 60‑day period set forth above.

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

### NOTICE OF APPEAL RIGHTS[8]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file

---

[8] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[9] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[9] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                          /s/ for
                                _____
                                Jennifer Everling
                                Acting Clerk of the Board

Washington, D.C.



**DEFENSE FINANCE AND ACCOUNTING SERVICE**
**Civilian Pay Operations**

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



## *National Finance Center Checklist for Back Pay Cases*

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.